UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

HOBBY LOBBY STORES, INC,  :
: Civil Docket No. 21-CV-3113
Plaintiff, :
- against - : **PLAINTIFF'S MOTION**
: **TO TRANSFER VENUE**
DIRK D. OBBINK, :
:
Defendant. :

---

# Plaintiff's Memorandum of Law in Support of Motion to Transfer Action

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................................ii

Introduction ..................................................................................................................................1

Background...................................................................................................................................1

Discussion .....................................................................................................................................3

    I.    Defendant Obbink Is Subject to the Personal Jurisdiction of the Oklahoma Court and the Action "Might Have Been Brought" in the WDOK ............................................................4

    II.    Transfer of this Action to the WDOK Promotes Convenience and Justice.........................5

        A.  Convenience of the Witnesses.................................................................................5

        B.  The Location of Relevant Documents and Access to Sources of Proof................7

        C.  The Convenience of the Parties...............................................................................8

        D.  The Locus of Operative Facts .................................................................................8

        E.  The Fifth and Sixth Factors Are Neutral................................................................8

        F.  The Seventh Factor Favors Transfer .....................................................................9

        G.  The Interest of Justice Based on the Totality of the Circumstances .....................9

Conclusion ................................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*American Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254 (W.D. Mo. 1980) ............................. 4

*Cirrex Sys. LLC v. InfraReDx, Inc.*, 2010 WL 3431165 (S.D.N.Y. Aug. 31, 2010) ..................... 7

*Command Arms Accessories, LLC v. ME Tech. Inc.*, 2019 WL 5682670 (S.D.N.Y. Oct. 31, 2019) ................................................................................................................................................ 6

*Dickerson v. Novartis Corp.*, 315 F.R.D. 18 (S.D.N.Y. 2016) ...................................................... 8

*Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181 (E.D.N.Y. 2003) ………....…………..…4,6

*Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370 (S.D.N.Y. 2006) ......................... 8

*Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282 (S.D.N.Y. 2006) ………………… 6,8

*In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008) ................................................................................................................................................ 7

*Intria Corp. v. Intira Corp.*, No. 00 Civ. 7198, 2000 U.S. Dist. LEXIS 17039 (S.D.N.Y. Nov. 27, 2000) ............................................................................................................................................ 6

*Invivo Research, Inc. v. Magnetic Resonance Equipment*, 119 F. Supp. 2d 433 (S.D.N.Y. 2000) ................................................................................................................................................ 4

*I-T-E- Circuit Breaker Co. v. Regan*, 348 F.2d 403 (8th Cir. 1965) .............................................. 4

*Kroll v. Lieberman*, 244 F. Supp. 2d 100 (E.D.N.Y. 2003) .......................................................... 4

*Lewis v. C.R.I., Inc.*, No. 03 Civ. 651, 2003 U.S. Dist. LEXIS 6362 (S.D.N.Y. Apr. 15, 2003) ... 6

*Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573 (S.D.N.Y. 2001) .......................... 6

*Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978) .................................................................. 4

*US v. Nature's Farm Prod., Inc.*, 2004 U.S. Dist. LEXIS 8485, 2004 WL 1077968 .................... 9

**Statutes-Rules**

Fed. R. Civ. P. 4(f)(1) .................................................................................................... 1

NY CPLR §302(1) ......................................................................................................... 2

12 Okla. Stat. §2004(F) ................................................................................................. 5

28 U.S.C. § 1332(a) ....................................................................................................... 5

28 U.S.C. § 1391(b)(2) ................................................................................................ 4,5

28 U.S.C. § 1391(b)(3) .................................................................................................. 2

28 U.S.C.§ 1404(a) …………………………………………………………………… 3,4,10

# INTRODUCTION

Pursuant to the Court's Order of October 28, 2022, Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby Stores" or "the Company") submits this memorandum of law in support of its motion to transfer this action (the "Action") from the United States District Court for the Eastern District of New York (the "EDNY") to the United States District Court for the Western District of Oklahoma (the "WDOK"), where Hobby Lobby's business operations are based, where the transactions underlying Hobby Lobby's claims were conducted, and where the witnesses who will be most material to this litigation are located.

# BACKGROUND

Hobby Lobby filed its Complaint on June 2, 2021 against Defendant Dirk D. Obbink ("Obbink") to recover damages for fraud and breach of contract relating to seven purchases (the "Purchases" and each, a "Purchase") of, *inter alia*, ancient papyrus fragments (the "Fragments"), certain of which, unbeknownst to Hobby Lobby, had been stolen by Obbink from the University of Oxford. (ECF Docket No. 1). Obbink was served with the Summons and Complaint at his residence in Oxford, England pursuant to Fed. R. Civ. P. 4(f)(1), in accordance with the rules of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, to which the United Kingdom is a signatory. (ECF Docket No. 6). A letter to the Court explaining the difficulties Hobby Lobby had had in effecting service of process and the validity of the means of service used was filed on September 13, 2021. (ECF Docket No. 7). Though Obbink was required to answer or otherwise respond to the Complaint by September 28, 2021, he failed to file an Answer or otherwise respond to the Complaint, and he has not, to date, appeared in the Action. On November 18, 2021, Hobby Lobby filed a Request for Certificate of Default (ECF

Docket No. 8) and the Clerk of the Court entered a default against Obbink on November 30, 2021. (ECF Docket No. 9).

Hobby Lobby filed a motion for a default judgment (the "Default Motion") on December 21, 2021 (ECF Docket No. 10), which was referred to Magistrate Judge Marcia M. Henry for report and recommendation. By Scheduling Order dated June 2, 2022 (ECF Docket No. 10-3), Judge Henry directed Hobby Lobby to file a memorandum of law in support of the Default Motion addressing the legal basis for the requested relief or, alternatively, withdraw the Default Motion and amend its Complaint. Among the issues Judge Henry directed to be addressed by the memorandum of law were why the Court has personal jurisdiction over Obbink and why venue in the Eastern District of New York is proper. Hobby Lobby filed its memorandum of law on June 20, 2022 (ECF Docket No. 11).

On June 30, 2022, Judge Henry held a motion hearing which addressed, among other things, the questions of personal jurisdiction and venue. Hobby Lobby stated reasons why the Court has personal jurisdiction over Obbink in New York pursuant to New York's long-arm statute, CPLR §302(1), and the Due Process Clause of the United States Constitution, including that Obbink was an active dealer in ancient papyri for many years, selling such objects to purchasers in New York and traveled to the United States to conduct such business from the United Kingdom through John F. Kennedy International Airport, which he also used to send the objects at issue in the Action to Hobby Lobby and to meet with representatives of Hobby Lobby and the Museum of the Bible in other cities in connection with the transactions at issue in the Action. Hobby Lobby also stated that venue in the Eastern District of New York is proper under 28 U.S.C. §1391(b)(3) because Obbink is not resident in the United States and is subject to personal jurisdiction in New York. Judge Henry concluded that allegations pertaining to personal

<blockquote></blockquote>

<blockquote></blockquote>

2

jurisdiction had not been fully set forth in the Complaint. Hobby Lobby agreed to withdraw its Default Motion and amend the Complaint to include such allegations and address other issues in the pleading of its claims. (ECF Docket No. 13, 6:1-12). Judge Henry's Report and Recommendations to the Court, recommending that the Default Motion be denied as moot and leave be granted to Hobby Lobby to amend its Complaint, followed on July 21, 2022. (ECF Docket No. 13-2). The Court issued its Order Adopting Report and Recommendations on July 22, 2022. (ECF Docket No. 13-3).

On July 28, 2022, Hobby Lobby submitted a letter to the Court requesting a pre-motion conference on this motion to transfer venue to the WDOK. (ECF Docket No. 14). In an Order dated October 28, 2022, the Court stated that a pre-motion conference was unnecessary, and directed Hobby Lobby to serve its motion to transfer on Obbink by November 28, 2022, but without filing the motion on the docket.

Attached as Exhibit A to the accompanying Declaration of Michael McCullough is the form of an Amended Complaint, with changes reflected in red-line,[1] that Hobby Lobby would file in the WDOK once the case is transferred there. The draft Amended Complaint ("Amd. Compl.") includes allegations sufficient to establish that the WDOK has personal jurisdiction over Obbink and that the WDOK would be a proper venue for the Action.

This memorandum of law is filed in support of the motion to transfer venue.

## DISCUSSION

Pursuant to 28 U.S.C. §1404(a), the Court should transfer this Action to the WDOK. Although Hobby Lobby believes this Court has personal jurisdiction over Obbink and therefore

---

[1] In addition to adding allegations pertaining to jurisdiction and venue, the draft Amended Complaint includes details with respect to Obbink's fraudulent representations. The factual allegations in the draft Amended Complaint are otherwise virtually identical to those in the Complaint filed with this Court.

3

venue in this District is proper under 28 U.S.C. §1391(b)(3), it wishes to obtain a default judgment against Obbink in the most expeditious way possible. To obviate any personal jurisdiction issues relating to New York and for reasons of convenience, we respectfully request that the Court transfer the Action to the WDOK pursuant to 28 U.S.C. §1404(a).

Any party, including the plaintiff, may move for a transfer under §1404(a). *I-T-E- Circuit Breaker Co. v. Regan*, 348 F.2d 403 (8th Cir. 1965); *American Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 260 (W.D. Mo. 1980). "The moving party has the burden of proof, and must make a convincing showing of the right to transfer." *American Standard*, 487 F. Supp. at 261. The power of the court to transfer is limited to those districts or divisions where the case "might have been brought." 28 U.S.C. §1404(a). *Id*. and authorities cited.

In considering whether to grant a venue transfer, courts engage in a two-part test: (1) whether the action "might have been brought" in the proposed transferee forum; and (2) whether the transfer promotes convenience and justice. *Excelsior Designs, Inc. v Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (*citing Schertenleib v. Traum*, 589 F.2d 1156, 1161 (2d Cir. 1978); *Invivo Research, Inc. v. Magnetic Resonance Equipment*, 119 F. Supp. 2d 433, 436 (S.D.N.Y. 2000)). In making this determination, courts are guided by the following factors: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *Id*., *citing Kroll v. Lieberman*, 244 F. Supp. 2d 100, 102 (E.D.N.Y. 2003).

I.  **Defendant Obbink Is Subject to the Personal Jurisdiction of the Oklahoma Court and the Action "Might Have Been Brought" in the WDOK**

Section 1404(a) provides that: "for the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district where it might have been brought."  The facts in the draft Amended Complaint fully support the exercise of personal jurisdiction by the WDOK over Obbink as a district "where [the Action] might have been brought." First, the WDOK has subject matter jurisdiction under 28 U.S.C. §§1332(a). Second, the WDOK has personal jurisdiction over Obbink because Obbink actively conducted business within the state and/or because he committed tortious acts within Oklahoma. 12 Okla. Stat. §2004(F) states, "[A] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Among other things, Obbink sent the Fragments at issue in the Action from the United Kingdom to Hobby Lobby in Oklahoma City, where Hobby Lobby is headquartered. The contracts for the purchase of the Fragments were negotiated by Hobby Lobby from Oklahoma City and the contracts were written under Oklahoma law.  Further, Obbink participated in multiple meetings in connection with his sale of the Fragments with representatives of Hobby Lobby in Oklahoma City. (*See* accompanying Affidavit of Steve Green (the "Green Aff."), ¶¶8-10.  In fact, personal jurisdiction over Obbink is clearer in the WDOK than in the EDNY.  Last, venue is proper in the WDOK because, pursuant to 28 U.S.C. §1391(b)(2), as set forth above and in more detail below, the alleged conduct giving rise to Hobby Lobby's claims occurred primarily within the WDOK.

Accordingly, Hobby Lobby would be able to obtain a default judgment more expeditiously in the WDOK.

**II.     Transfer of this Action to the WDOK Promotes Convenience and Justice**

**A.     Convenience of the Witnesses**

5

The convenience of the witnesses is "probably the single most important factor in the transfer analysis." *Excelsior Designs, Inc. v Sheres*, 291 F Supp. 2d 181, 185-186 (E.D.N.Y. 2003); *See also Lewis v. C.R.I., Inc.*, No. 03 Civ. 651, 2003 U.S. Dist. LEXIS 6362, at *10 (S.D.N.Y. Apr. 15, 2003); *Intria Corp. v. Intira Corp.*, No. 00 Civ. 7198, 2000 U.S. Dist. LEXIS 17039, at *8 (S.D.N.Y. Nov. 27, 2000). Because of the importance of this factor, the party seeking transfer "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Id.* at 185-186; *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (internal quotations and citation omitted). "The convenience of witnesses who reside in neither the current nor the transferee forum is irrelevant when considering a motion to transfer." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 288 (S.D.N.Y. 2004) (emphasis added); see *Command Arms Accessories, LLC v. ME Tech. Inc.*, 2019 WL 5682670, at *6 (S.D.N.Y. Oct. 31, 2019) (similar).

Steve Green ("Green"), the President of Hobby Lobby, was responsible for negotiating and purchasing the Fragments from Obbink. *See* Green Aff., ¶6. Thus, Green will be Hobby Lobby's main witness in this Action and will testify to Obbink's misrepresentations made the negotiations of the Purchases, Hobby Lobby's justified reliance on Obbink's representations, and the injury to Hobby Lobby from Obbink's misrepresentations. He lives and works in the WDOK. *Id*. at ¶13. Green met Obbink in 2009 after Obbink became aware that Hobby Lobby was active in the private art market in building a biblical antiquities collection to serve as the base collection for The Museum of the Bible. Green met with Obbink multiple times in the WDOK related to the negotiation and consummation of the Purchases. *Id*. at ¶¶8-10.

Two other Hobby Lobby employees were involved in the acquisition of the Fragments was carried out by two other employees, Green's Executive Assistant, Marsha Bold ("Bold") and

6

Debbie Cooper ("Cooper"), Hobby Lobby's Shipping Coordinator. Green Aff., ¶¶11-12. Both Bold and Cooper live and work in the WDOK. Green Aff., ¶13. Bold will testify to Obbink's misrepresentations made during the negotiations of the Purchases, Hobby Lobby's justified reliance on Obbink's representations, and the injury to Hobby Lobby from Obbink's misrepresentations. Cooper will testify to Hobby Lobby's justified reliance on Obbink's representations, and the injury to Hobby Lobby from Obbink's misrepresentations.

Neither Green, Bold, Cooper, nor any of the former Hobby Lobby employee who could be witnesses in this Action lives or works in the EDNY. Green Aff., ¶13. In fact, none of the identified material witness on either side of this Action, including Obbink, resides or works in the EDNY. If the case proceeds in the EDNY, every witness, on both sides, will need to travel from some other location. In contrast, Hobby Lobby's employees who dealt with Obbink and who supervised Hobby Lobby's acquisition of the Fragments all live and work in the WDOK.

Courts have repeatedly granted motions to transfer to the district where a party's employees with knowledge of the operative facts live. See, e.g., *Cirrex Sys. LLC v. InfraReDx, Inc.*, 2010 WL 3431165, at *3 (S.D.N.Y. Aug. 31, 2010) (transferring case to district where the defendant's employees knowledgeable about facts at issue resided); *In re Glob. Cash Access Holdings*, *Inc. Sec. Litig.*, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008) (similar). The convenience of witnesses factor therefore weighs heavily in favor of transfer to the WDOK.

**B.     The Location of Relevant Documents and Access to Sources of Proof**

The location of documents and sources of proof factor also weighs in favor of transfer. Because Oklahoma City is the center of gravity for Hobby Lobby's operations, that location is where Hobby Lobby maintains all hard copy documents— materials that will be relevant to Plaintiff's allegations. Green Aff. ¶14. In contrast, none of Hobby Lobby's hard copy documents

relevant to this case are maintained in the EDNY. *Id*. While technology has made shipping documents easier and less expensive, retaining this action in New York would still impose additional costs on Hobby Lobby that it would not incur if the case were transferred to the WDOK. *Cirrex*, 2010 WL 3431165, at *3. Where, as here, transfer would reduce the burden of producing documents, even if the resulting benefit is "incremental," this factor weighs in favor of transfer. *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374-75 (S.D.N.Y. 2006); see also *Herbert Ltd. P'ship*, 325 F. Supp. at 282, 289 (S.D.N.Y. 2006).

### C. The Convenience of the Parties

The WDOK would be a more convenient forum for Hobby Lobby. New York and Oklahoma City are equally convenient for Obbink because he lives and works in the United Kingdom and neither forum would be more convenient for him.

### D. The Locus of Operative Facts

For similar reasons, the locus of operative facts also strongly favors transfer. "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 30 (S.D.N.Y. 2016) (*internal quotations and citation omitted*). The Complaint focuses on Hobby Lobby's purchase of the Fragments from Obbink. Amd. Compl. ¶¶1,13-18. The negotiations between Hobby Lobby and Obbink for the Purchases were done in meetings between Green and Obbink in the WDOK. The seven contracts for the Purchases were negotiated by Hobby Lobby from Oklahoma City and are written under Oklahoma law. The WDOK is the headquarters of Hobby Lobby's operations, and Oklahoma City is where all the Hobby Lobby employees involved in the Purchases are located. Green Aff., ¶¶3,13.

### E. The Fifth and Sixth Factors Are Neutral

Hobby Lobby Stores is not aware of any "unwilling witnesses" who would require compulsion to appear in either judicial district. *US* v. *Nature's Farm Prod., Inc.,* 2004 U.S. Dist. LEXIS 8485, 2004 WL 1077968, at *3. Nor do the "relative means of the parties" independently weigh for or against a transfer. Both Hobby Lobby and Obbink have the capability to litigate in either Oklahoma or New York.

**F.  The Seventh Factor Favors Transfer**

The "forum's familiarity with the governing law factor" favors transfer from EDNY to WDOK because the contracts underlying all seven Purchases were written under Oklahoma law; the contracts contain a choice-of-law clause that elects Oklahoma law as the governing law of the contacts. Thus, the fraud and breach of contract claims concerning the Purchases is better suited to adjudication in the WDOK.

**G.  The Interest of Justice Based on the Totality of the Circumstances**

Finally, the interests of justice and the totality of the circumstances weigh heavily in favor of transfer to the WDOK. This factor considers the overall impact of transfer, and the Court's interest in the efficient adjudication of the case. See *US v. Nature's Farm Prod, Inc.*, 2004 WL 1077968, at *7. Hobby Lobby filed its pre-motion request to transfer promptly, and Obbink is in default for not appearing in this action. Hence, Obbink has not invested any resources litigating this action. Likewise, Hobby Lobby is unable to conduct jurisdictional discovery in this Action due to Obbink's default, leaving Hobby Lobby and the Court with limited means to address the Court's concerns about personal jurisdiction in the EDNY.

Plaintiff's arguments therefore strongly support transfer here.

\*　　\*　　\*

This case should be litigated in the WDOK, the venue that is convenient for the most material witnesses in the case, was the locus of the operative facts at issue, and where the documents that relate to those facts are stored. No material witnesses reside or work in the EDNY and no material events occurred here. Because the most important factors all weigh in favor of transfer, and because the remaining factors are neutral, Hobby Lobby Stores respectfully requests that the Court transfer this action to the WDOK pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

For the foregoing reasons, Plaintiff Hobby Lobby Stores, Inc. respectfully requests that the Court issue an order granting (i) its motion to transfer this action to the United States District Court for the Western District of Oklahoma; and (ii) such other and further relief it deems just and proper.

Dated: New York, New York
      November 22, 2022

Respectfully submitted,

Pearlstein & McCullough LLP

By: /s/ Michael McCullough
    Michael McCullough
    Anju Uchima
641 Lexington Avenue, 13th Floor
New York, NY 10022
Tel: (646) 762-7264
MMcCullough@PMCounsel.com
AUchima@PMCounsel.com

Attorneys for Plaintiff