UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x
HOBBY LOBBY STORES INC.,                          :
                                                  :
                              Plaintiff,          :
                                                  :                MEMORANDUM &
            -against-                             :                ORDER
                                                  :
DIRK D. OBBINK,                                   :
                                                  :                21-CV-3113 (RPK)(MMH)
                              Defendant.          :
--------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Hobby Lobby Stores, Inc. ("Hobby Lobby") sues Defendant Dirk D. Obbink

for fraud and breach of contract in connection with its purchase of ancient papyri fragments.

(*See generally* Compl., ECF No. 1.)[1]  Before the Court is Hobby Lobby's unopposed motion

to change venue, pursuant to 28 U.S.C. § 1404(a).  (Notice of Mot., ECF No. 15.)  For the

reasons stated below, Hobby Lobby's motion is **granted**.[2]

I.      **BACKGROUND**

        A.      **Factual Allegations**

        The following facts are taken from the Complaint.  Hobby Lobby, an Oklahoma

corporation, was active in the private art market in amassing a biblical antiquities collection

for the Museum of the Bible ("MOTB"), to be built in Washington, D.C.  (Compl., ECF No.

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___")
and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] "Because a motion to transfer venue is non-dispositive, this Court, to whom the motion was
referred [by the Honorable Rachel P. Kovner] will adjudicate it by order pursuant to 28 U.S.C.
§ 636(b)(1)(A) (rather than by issuing a report and recommendation)." *United States ex rel. Fisher
v. Bank of Am., N.A.*, 204 F. Supp. 3d 618, 620 n.1 (S.D.N.Y. 2016) (collecting cases).

1 ¶¶ 4, 12.)  Obbink, who resides in the United Kingdom, is a leading scholar of ancient papyri and a private dealer of papyri fragments and other antiquities.  (*Id.* ¶¶ 5, 11.)

Pursuant to seven private sale agreements between February 2010 and February 2013, Hobby Lobby viewed and purchased ancient papyri fragments from Obbink and paid for each by wire transfer to a bank account used by Obbink in Michigan, for a total of approximately $7,095,100.  (*Id.* ¶¶ 1, 13–14.)  For each of the purchases, Obbink represented that he was selling papyri that he obtained from private collectors.  (*Id.* ¶ 15.)  After each purchase, except for the seventh ("Purchase 7"), Hobby Lobby imported the subject fragments into the United States.  (*Id.* ¶ 18.)  Obbink kept Purchase 7, which included four papyrus pieces of New Testament Gospels ("the Gospel Fragments"), for research and never delivered the pieces to Hobby Lobby.  (*Id.*)

In or about December 2017, Obbink told Hobby Lobby that he had "mistakenly" sold the Gospel Fragments and that they were owned by his employer, the Egyptian Exploration Society ("EES").  (*Id.* ¶ 19.)  Hobby Lobby made a written demand in January 2018 to Obbink for $760,000, the purchase price of the Gospel Fragments.  (*Id.*)  Months later, in June 2018, Hobby Lobby reiterated the same demand.  (*Id.*)  Later that month, Obbink responded and agreed to return the $760,000 "by late August or early September."  (*Id.* ¶ 20.)  In email exchanges in fall 2018 and spring 2019, Obbink told Hobby Lobby that he had to sell objects from his personal collection at auction to pay the $760,000.  (*Id.* ¶ 21.)  On September 24, 2019, as "proof of his commitment," Obbink emailed a receipt of a wire transfer of $10,000 to Hobby Lobby's bank account but did not otherwise make any efforts to return the entire $760,000.  (*Id.* ¶ 22.)

Between April and June 2019, MOTB and EES representatives met and determined that Obbink had stolen the Gospel Fragments and other pieces of papyri from EES and sold them to Hobby Lobby.  (*Id.* ¶¶ 23–25.)  As of June 2021, 32 items have been identified as stolen by Obbink from EES and sold to Hobby Lobby.  (*Id.* ¶ 25.)

### B.       Procedural History

Hobby Lobby initiated this action in June 2021, alleging fraud and breach of contract. (Compl., ECF No. 1.)  Obbink was served with process at his residence in Oxford, England, in September 2021, pursuant to Federal Rule of Civil Procedure 4(f)(1).[3]  (ECF No. 7.)  When Obbink failed to respond to the Complaint, Hobby Lobby moved for default judgment, which the Honorable Rachel P. Kovner referred for report and recommendation.  (Mot. for Default Jdgmt., ECF No. 10; Dec. 23, 2021 Order.)

At a motion hearing on June 30, 2022, Hobby Lobby expressed its intent to forego seeking default judgment in favor of amending the Complaint.  (June 30, 2022 Order.)  Hobby Lobby conceded that the Complaint alleged that Obbink transacted business and/or committed tortious acts in New York but did not plead any other facts regarding this Court's personal jurisdiction over Obbink.  (Transcript ("Tr."), ECF No. 13 at 5:4–6:12; *see* Compl., ECF No. 1 ¶ 7.)  Hobby Lobby stated that the activities giving rise to its claims occurred in the United Kingdom and Oklahoma City and, occasionally, through John F. Kennedy International Airport in Queens, New York.  (Tr., ECF No. 13 at 8:1–12.)

---

[3] Obbink was served under the rules of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"), to which the United Kingdom is a signatory.  (ECF No. 7.)

Following the hearing, the Court recommended denying the motion for default judgment as moot.  (July 21, 2022 Report & Rec.)  The Court advised that an amended complaint would need to "include sufficient allegations of personal jurisdiction over [Obbink] and venue in this district."  (*Id.*)  Subsequently, Hobby Lobby moved to transfer venue to the Western District of Oklahoma.  (Notice of Mot., ECF No. 15.)

## II.    DISCUSSION

### A.    Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" or, if there is no district in which an action may otherwise be brought, "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(2)–(3).

"Motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."  *Nat'l Experiential, LLC v. Nike, Inc.*, No. 20-CV-3197 (ENV)(SIL), 2021 WL 9678642, at \*3 (E.D.N.Y. July 31, 2021) (cleaned up) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)).  A court has the power to transfer venue even if it lacks personal jurisdiction over the defendant.  *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001).

In considering a motion to transfer, a court must determine (1) whether the action could have been brought in the transferee court and (2) whether transfer is appropriate in light of the convenience of parties and witnesses and the interests of justice.  *Burke v. Bimbo Bakeries*

4

*USA, Inc.*, No. 5:19-CV-902 (MAD/ATB), 2020 WL 4597319, at *2 (N.D.N.Y. May 14, 2020).  Once it is established that a plaintiff could have originally brought the action in the transferee court, courts typically determine whether the case should be transferred by weighing the following nine factors:

> (1) convenience of the witnesses; (2) convenience of the parties; (3) locus of operative facts; (4) availability of process to compel the attendance of unwilling witnesses; (5) location of relevant documents and other sources of proof; (6) relative means of the parties; (7) relative familiarity of the forum with the governing law; (8) weight accorded to plaintiff's choice of forum, and (9) the interests of justice.

*Erickson v. MGM Grand, Inc.*, No. 13-CV-564 (NRB), 2014 WL 12774971, at *3 (S.D.N.Y. June 25, 2014).  "Courts have discretion when balancing these factors and no one factor is decisive." *Id.*  Generally, the moving party "bears the burden of establishing the propriety of transfer by clear and convincing evidence." *Nat'l Experiential*, 2021 WL 9678642, at *3.

**B.     Analysis**

Hobby Lobby argues that transfer is warranted because the transactions underlying the Complaint's allegations took place in the Western District of Oklahoma and that district is a more convenient forum than the Eastern District of New York for witnesses.  (Mem., ECF No. 18 at 5, 7–8, 10–11.)  The Court agrees that circumstances of this case favor transfer.

**1.     Changed Circumstances**

First, the Court notes that Hobby Lobby, as the plaintiff, already had an opportunity to choose the appropriate forum when filing this action.   The Second Circuit has not ruled on, and courts in this Circuit disagree on, whether a plaintiff seeking to transfer venue must demonstrate a change in circumstances since filing the suit.  For some courts, absent such showing, a "motion to transfer venue is not ordinarily granted at the request of the party who

5

chose the forum in the first place." *Megna v. Biocomp Lab'ys Inc.*, 220 F. Supp. 3d 496, 498 (S.D.N.Y. 2016) (requiring plaintiff to show change in circumstances in motion to transfer venue); *see also, e.g.*, *Bakken Res., Inc. v. Edington*, No. 15-CV-8686 (ALC), 2019 WL 1437273, at *6 (S.D.N.Y. Mar. 29, 2019) (denying motion for transfer for failure to show, *inter alia*, changed circumstances); *Erickson*, 2014 WL 12774971, at *3 (where plaintiffs seek transfer of venue, they bear the burden to "show either that the new developments would have changed where they first filed the suit or that the changes in circumstances are so integrally related to the case as to support transfer to a new forum"). For other courts, "the weight of authority favors the view that even though a bona fide change in circumstances may be a sure sign that transfer of venue would be in the interests of justice, it does not augment or displace that essential inquiry." *Nat'l Experiential*, 2021 WL 9678642, at *4 (declining to follow "a rigid 'changed circumstance' rule") (citing cases); *see also, e.g.*, *Burke*, 2020 WL 4597319, at *4 (noting that even if changed circumstances existed, plaintiff's request to transfer venue was appropriate in the interests of justice); *U.S. ex rel. Smith v. Yale Univ.*, No. 3:02-CV-1205 (PCD), 2006 WL 1168446, at *2 (D. Conn. Apr. 28, 2006) (finding that an action may be transferred even if plaintiff cannot show change in circumstances if transfer is "in the interest of justice").

This Court finds that the interests of justice inquiry adequately subsumes consideration of any change in circumstances. *See Nat'l Experiential*, 2021 WL 9678642, at *4 ("[T]he Second Circuit has repeatedly considered transfers of venue initiated by plaintiffs without even mentioning this [changed circumstances] requirement") (citing *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) and *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978)). Thus, Hobby Lobby is not required to show a change in circumstances here,

and the Court will address the relevant factors under section 1404(a).  *Burke*, 2020 WL

4597319, at *4.

### 2.      The Forum Where the Action Might Have Been Brought

Hobby Lobby has shown that this action could have originally been brought in the

Western District of Oklahoma.  28 U.S.C. § 1404(a).  First, the Western District of Oklahoma

has subject matter jurisdiction because the Complaint alleges that the parties are diverse and

that the amount in controversy exceeds $75,000.   (Compl., ECF No. 1 ¶¶ 4–6.)   These

allegations sufficiently establish diversity jurisdiction.  28 U.S.C. § 1332(a).

Second, the Western District of Oklahoma could have exercised personal jurisdiction

over Obbink at this case's inception. "Federal courts' personal jurisdiction over parties is

authorized by the long-arm statute of the state in which they sit."  *Erickson*, 2014 WL

12774971, at *2 (citing Fed. R. Civ. P. 4(k)(1)(A)).  In this case, Oklahoma's long-arm statute

permits the exercise of "jurisdiction on any basis consistent with . . . the Constitution of the

United States."  12 Okla. Stat. § 2004(F); *Maxum Petro., Inc. v. Hiatt*, No. 3:16-CV-1615

(VLB), 2017 WL 11447166, at *5 (D. Conn. Feb. 27, 2017) (citing *Intercon, Inc. v. Bell Atl.

Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)).  "Constitutional requirements are

met only when a defendant has sufficient contacts with the sovereign such that the maintenance

of the suit does not offend traditional notions of fair play and substantial justice."  *Maxum

Petro.*, 2017 WL 11447166, at *5 (cleaned up) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*,

564 U.S. 873, 880 (2011)).  Hobby Lobby easily meets this standard. According to Hobby

Lobby's president Steve Green, between 2010 and 2013, Obbink met with him and other

Hobby Lobby employees several times in Oklahoma City (located in the Western District of

Oklahoma) to negotiate, complete, or otherwise discuss the sale of papyri that underlie the

Complaint's allegations of fraud.  (Green Aff., ECF No. 16 ¶¶ 8–11.)  Further, the papyri fragments at issue were delivered to and stored at Hobby Lobby's location in Oklahoma City. (*Id.* ¶ 13.)

Because Obbink is subject to jurisdiction in the Western District of Oklahoma, the Court finds that this action could have originally been brought in that district.

### 3.  Convenience and the Interests of Justice

A balanced review of the relevant factors also supports transfer to the Western District of Oklahoma based on convenience and in the interests of justice.   28 U.S.C. § 1404(a).

At least five factors weigh in favor of transfer.  The first factor—the convenience of the witnesses, "one of the most important factors in determining whether to transfer venue," *Burke*, 2020 WL 4597319, at *6—strongly justifies transfer because the primary witnesses are Hobby Lobby employees who live and work in the Western District of Oklahoma.  (Green Aff., ECF No. 16 ¶¶ 11–14.)  The second factor, the convenience of the parties, also justifies transfer, albeit less strongly.  Because Obbink lives in the United Kingdom, "there would be little or no difference in convenience to [him] personally" in defending the claims in the Eastern District of New York or in the Western District of Oklahoma, nor would transfer "switch the burden of inconvenience" from Hobby Lobby to Obbink.   *Burke*, 2020 WL 4597319, at *7. The third factor, the locus of operative facts, also favors transfer because Hobby Lobby's representatives met with Obbink in Oklahoma City regarding the sales detailed in the Complaint. (Green Aff., ECF No. 16 ¶¶ 8–10.)  And for the same reasons, the fifth and seventh factors—the location of relevant documents and other sources of proof and the proposed forum's relative familiarity with the governing law—also support transfer.  Hobby Lobby's headquarters is located in Oklahoma City, all the documents relevant to this action

are stored there, and all of the documents' custodians live and work in the Western District of Oklahoma. (*See* Green Aff., ECF No. 16 ¶ 14.)

Three factors are neutral and therefore neither favor nor disfavor transfer to the Western District of Oklahoma. For example, Hobby Lobby does not proffer facts to show that the fourth factor, process to compel attendance of unwilling witnesses, will be necessary in either forum. The sixth factor, the relative means of the parties, is also neutral because both parties have the capability to litigate in either Oklahoma or New York. The eighth factor, the weight given to plaintiff's choice of forum, "does not tip the scales either way" because Hobby Lobby is seeking to override its own choice of forum. *Nat'l Experiential*, 2021 WL 9678642, at \*5 n.3.

As for the final factor, the interests of justice, "the appropriate considerations for this factor have been largely, if not entirely, developed in the Court's analysis of the preceding eight factors." *Id.* at \*7; *cf. Bakken Res.*, 2019 WL 1437273, at \*6 (denying transfer as "contrary to the interests of justice" when "plaintiff did not produce any factual or party nexus connecting the present case" to the requested transfer forum).

In sum, because all of the relevant factors either weigh in favor of transfer or are neutral, and no factor weighs against transfer, the Court finds that transfer to the Western District of Oklahoma is appropriate.

## III.   CONCLUSION

For the foregoing reasons, Hobby Lobby's motion to transfer venue is **granted**. The Clerk of Court is respectfully directed to transfer this case to the United States District Court for the Western District of Oklahoma within seven days of the date of this Order, pursuant to

Local Civil Rule 83.1.  Hobby Lobby shall mail a copy of this Order to Obbink and shall file

proof of service forthwith.

**SO ORDERED.**

Brooklyn, New York
September 23, 2023

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge